IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-02293-RBJ

JUSTIN J. DEHERRERA

    Plaintiff,

v.

NANCY A. BERRYHILL,[*] Acting Commissioner of Social Security

    Defendant.

# ORDER

This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying claimant Justin J. DeHerrera's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses and remands the Commissioner's decision.

## STANDARD OF REVIEW

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the District Court examines the record and determines whether it contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). A decision is not based on substantial evidence if it is "overwhelmed by other

---

[*] Effective January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to rule 25(d) of the Federal Rules of Civil procedure, Nancy A. Berryhill is therefore substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Reversal may also be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## BACKGROUND

Mr. DeHererra was born in 1976 and is now 40 years old. *See* R. 25. He has a high school education. R. 60. He has worked as a day laborer, construction laborer, truss laborer, restaurant dishwasher, and golf course laborer. R. 174.

In March 2009 Mr. DeHerrera was in a car accident. R. 220, 796. He sustained right shoulder and elbow injuries, along with a neck injury. *See* R. 796. An MRI following the accident showed a herniated disc. R. 493, 501–502. Since the accident Mr. DeHerrera's resulting neck pain has been treated intermittently with epidural injections. *See* R. 217–221, 797–801. His neck pain increasingly resulted in pain and numbness in his shoulders and arms, and occasionally seizure-like symptoms triggered by moving his neck. *See, e.g.*, R. 779–81.

Additionally, Mr. DeHerrera fractured a toe on his right foot in 2012, which affected his gait. *See* R. 324, 796. He has used physical therapy intermittently to address the resulting gait issues. *See, e.g.*, R. 466–77. In 2014 a cut on his right hand became infected and required surgical debridement. R. 749, 767–68. Since the surgery, Mr. DeHerrera has had difficulty using and closing his right hand. R. 45, 202.

Mr. DeHerrera also suffers from depression. *See, e.g.*, R. 202. He has suffered from mental problems since he was 14, and his depression has recently become more severe. R. 18.

2

In 2014 he participated in group therapy sessions for three months, and had one individual therapy session. R. 645–54.

### A. Procedural History.

Mr. DeHerrera filed a claim for disability insurance benefits on February 22, 2013 and supplemental security income benefits on January 15, 2014. *See* R. 14, 34, 146. Mr. DeHerrera alleged disability beginning March 16, 2009. R. 14. His claims for disability benefits were denied on January 17, 2014. R. 66–69. Mr. DeHerrera then requested a hearing, which was held before Administrative Law Judge ("ALJ") Earl W. Shaffer on April 16, 2015. R. 32. The ALJ issued a decision denying benefits on May 5, 2015. R. 11–13. The Appeals Council denied Mr. DeHerrera's Request for Review on August 2, 2016, rendering the ALJ's determination the final decision of the Commissioner for purposes of judicial review. R. 1–3. Mr. DeHerrera filed a timely appeal in this Court.

### B. The ALJ's Decision.

The ALJ issued an unfavorable decision after evaluating the evidence according to the SSA's standard five-step process. R. 14–26. First, the ALJ found that Mr. DeHerrera had not engaged in substantial gainful activity since his alleged onset date of March 16, 2009. R. 16. At step two, the ALJ found that Mr. DeHerrera had the severe impairment of degenerative disc disease of the cervical spine. *Id*. The ALJ found that the following alleged conditions or impairments either did not represent medically determinable impairments or were nonsevere: seizures/blurred vision/"vertigo cramps;" a broken metatarsal bone in the right foot; hands/wrist/right arm issues; knee issues; obesity; and mental impairments, including posttraumatic stress disorder, major depression and cognitive deficits. R. 17–19. At step three, the ALJ concluded that Mr. DeHerrera did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 20.

The ALJ then found that Mr. DeHerrera retained the residual functional capacity ("RFC") to perform light work at the unskilled level, except that Mr. DeHerrera is able to stand, walk, and sit for six hours in an eight-hour day.  R. 20.  The ALJ noted additionally Mr. DeHerrera should limit pushing and pulling with the upper and lower extremities; should not climb ladders, ropes, or scaffolds; should not crawl; should limit his overhead reaching; and should avoid exposure to extreme cold, vibration, unprotected heights and major industrial machinery.  *Id.*

At step four, the ALJ determined that Mr. DeHerrera is unable to perform any of his past relevant work.  R. 25.  At step five, the ALJ determined that "there are jobs that exist in significant numbers that the claimant can perform."  R. 25–26.  As a result, the ALJ concluded that Mr. DeHerrera was not disabled.  R. 26

## DISCUSSION

Mr. DeHerrera contends that the ALJ lacked valid reasons for rejecting two of Mr. DeHerrera's consultative doctors' opinions at the step three RFC determination phase: Dr. Rodriguez's opinion of mental impairments and Dr. Campbell's opinion of physical impairments.[1]  The Court will address each argument in turn.

**A.  Dr. Rodriguez's Opinion.**

Mr. DeHerrera contends that the ALJ improperly gave very little weight to Dr. Rodriguez's opinion about Mr. DeHerrera's mental impairments in assigning his mental RFC.

---

[1] Mr. DeHerrera's complaint alleged that the ALJ failed to adequately evaluate and weigh the treating, examining, and non-examining physicians' opinions; lacked support for the RFC finding; failed to adequately develop the record; and failed to properly assess Mr. DeHerrera's credibility.  ECF No. 1 at 2.  However, because Mr. DeHerrera failed to address any of these allegations in his briefing before this Court, these arguments are deemed waived.  *See, e.g.*, *Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009) (upholding the district court's finding that an issue was waived when claimant's counsel "failed to present any developed argumentation" about that issue).

4

ECF No. 14 at 7. During an attorney-requested examination, Dr. Rodriguez diagnosed Mr. DeHerrera with "posttraumatic stress disorder (related to abuse as a child and witnessing fire that resulted in the deaths of family and friends) and major depressive disorder." R. 18; *see also* R. 789–91. Further, Dr. Rodriguez opined that Mr. DeHerrera "was moderately or markedly impaired in most areas of mental functioning, and would be off-task thirty percent of the time and absent from a job at least three days per month." ECF No. 14 at 7; *see* R. 792–93.

Despite Dr. Rodriguez's diagnoses, the ALJ classified any alleged mental impairments including posttraumatic stress disorder, major depression, and cognitive deficits as non-severe. R. 18–19. The ALJ accordingly found that Mr. DeHerrera had the mental RFC for unskilled work. R. 23. In determining Mr. DeHerrera's level of mental impairment and mental RFC, the ALJ noted that he was assigning "[v]ery little weight" to Dr. Rodriguez's medical source statement. R. 19. In particular, the ALJ noted that:

> Although Dr. Rodriquez [sic] is an acceptable medical source, he is not a treating psychologist and he saw the claimant only one time in the context of an evaluation set up by the claimant's attorney. More importantly, the mental status examination findings of Dr. Rodriquez [sic] are inconsistent with those of the claimant's medical care providers . . . and are also inconsistent with the record of minimal mental health treatment during the period at issue in this case.

R. 19. Mr. DeHerrera contends that the ALJ's determination of the weight to be given to Dr. Rodriguez's opinion was based upon impermissible considerations. ECF No. 14 at 8. The Court will address each of these considerations in turn.

1. <u>Dr. Rodriguez Was Not a Treating Physician, and Saw Mr. DeHerrera Only Once.</u>

Mr. DeHerrera alleges that the ALJ improperly considered his treatment history with Dr. Rodriguez. *Id.* The ALJ is required to evaluate every medical opinion using the factors set out in SSA regulations, which include whether the medical opinion comes from a treating source. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating source is an acceptable medical

source who has provided medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An acceptable medical source is not a treating source if the claimant's relationship is based solely on the claimant's "need to obtain a report in support of [his] claim for disability." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). While an ALJ may consider the existence of a treatment relationship, the absence of such a relationship may not be the sole reason for rejecting such a medical opinion. *Quintero v. Colvin*, 567 F. App'x 616, 620 (10th Cir. 2014) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

In accordance with the regulatory factors, the ALJ noted that Dr. Rodriguez was not Mr. DeHerrera's treating source, but was instead a consultative physician with whom Mr. DeHerrera met solely for the purposes of his disability determination. R. 19. Mr. DeHerrera disputes this ground for discounting Dr. Rodriguez's opinion, arguing that under such logic, "'the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings.'" ECF No. 14 at 8 (quoting *Chapo*, 682 F.3d at 1291). While it is true that the ALJ would not be justified in rejecting Dr. Rodriguez's opinion solely because he was a non-treating physician, the ALJ did not do so in this case. *See* R. 19. Instead, because he assessed a variety of factors in deciding the weight to assign Dr. Rodriguez's opinion, the ALJ was justified in noting that Dr. Rodriguez was merely a consultative physician. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

2. <u>Mr. DeHerrera's Attorney Hired Dr. Rodriguez.</u>

Second, Mr. DeHerrera contests the ALJ's reliance on the fact that Mr. DeHerrera's attorney requested the consultation with Dr. Rodriguez. ECF No. 14 at 8. An ALJ may not discount a consulting examiner's opinion solely because the examination was prepared at

6

counsel's request for purposes of a disability hearing. *Quintero*, 567 F. App'x at 620. The Tenth Circuit has rejected the implication that "a consulting examiner's opinion is necessarily less trustworthy when it is sought or obtained by the claimant." *Id.* Unlike an inquiry into whether a treating relationship exists, the question of whether a claimant set up a consultative exam is not a regulatory factor that an ALJ may properly consider. *See id.* (citing 20 C.F.R. § 404.1527(c)).

The Commissioner concedes that the ALJ's consideration of this factor may have been improper, but she argues that any resulting error should be deemed harmless. ECF No. 15 at 11 n.12. I agree that the ALJ erred in considering this factor, but I see no need to address the Commissioner's request that the error be deemed harmless in light of other fatal issues with the ALJ's consideration of Dr. Rodriguez's opinion, as discussed below.

3. Comparing Dr. Rodriguez's Statements to Mr. DeHerrera's Physicians' Statements.

Mr. DeHerrera also contends that the ALJ erred by rejecting Dr. Rodriguez's statements in favor of contradictory mental health opinions from his medical care providers without assessing these opinions using the regulatory factors. ECF No. 14 at 9–10. Similarly, although social worker Thomas Clemens' findings may have corroborated Dr. Rodriguez's findings in some respects, Mr. DeHerrera argues that the ALJ failed to explain the weight that he was assigning to Clemens' findings. I agree.

The physicians' opinions cited by the ALJ are brief mental status statements provided in the context of Mr. DeHerrera's medical visits to the Pueblo Community Health Center for other, generally physical, issues. These opinions include notes that he was "alert and oriented x3," "oriented to time, place, person and situation," and had "[a]ppropriate mood and affect." *See, e.g.*, R. 320, 517, 531, 534. The ALJ summarized these assessments in cursory terms, noting that they showed normal memory, mood, and affect, which contradicted Dr. Rodriguez's findings. R.

7

19. However, the ALJ failed to consider other regulatory factors that might call these contradictory findings into question, such as the nature and extent of the treatment relationship (e.g., "the kinds and extent of examinations and testing the source has performed"); the amount of relevant evidence provided to support the opinions; whether the physicians were specialists in the field of mental health; and other factors, potentially including the brevity of the opinions and the context in which they were made. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Because the opinions at issue came from Mr. DeHerrera's treating medical sources, they should have been weighed accordingly. Under SSA regulations, a treating source's opinion merits controlling weight if it is supported by diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, if such an opinion does not merit controlling weight, the ALJ must determine the weight assigned to the opinion using the regulatory factors. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling ("SSR") 96–2p, 1996 WL 374188 at *4). The ALJ's decision about the weight he assigns to a treating source's opinion must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p at *5. Additionally, "to the extent there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R. §§ 404.1527(d)–(f)." *Reveteriano v. Astrue*, 490 F. App'x 945, 948 (10th Cir. 2012).

In this case, the ALJ failed to provide any rationale for the weight he assigned to the treating physicians' opinions about Mr. DeHerrera's mental health. The ALJ simply noted that these opinions contradicted Dr. Rodriguez's. R. 19. Because this Court "cannot simply presume

8

the ALJ applied the correct legal standards in considering [the other sources'] opinion[s]," remand is appropriate because the Court "cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician[s'] opinion[s]." *See Watkins*, 350 F.3d at 1301.

Similarly, the ALJ failed to explain how he was factoring in Mr. Clemens' mental health findings in his decision to reject Dr. Rodriguez's statements. Mr. Clemens is a social worker, so he would not be considered "an 'acceptable medical source,' but would instead be an 'other source.'" *Crowder v. Colvin*, 561 F. App'x 740, 744 (10th Cir. 2014) (quoting 20 C.F.R. § 416.913(a), (d)). However, an ALJ may not ignore a social worker's opinion entirely, but instead must apply the same factors to opinion evidence from "other sources" as he does to "acceptable medical sources." *Id.*; *see also* 20 C.F.R. §S 404.1527(f)(2), 416.927(f)(2) ("The adjudicator generally should explain the weight given to opinions from ["other"] sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning.").

Some of Mr. Clemens' mental health findings contradicted Dr. Rodriguez's findings (including that "the claimant was fully oriented"), but others may have corroborated Dr. Rodriguez's findings, including the diagnostic impressions of "unspecified personality disorder, [and] unspecified episodic mood disorder." R. 18, 646, 648, 650, 652, 653. However, aside from providing cursory summaries of these findings, the ALJ did not explain how he was accounting for or weighing such findings. Because Mr. Clemens' findings may have substantiated Dr. Rodriguez's findings, the ALJ should have articulated his reasons for discounting these findings. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not

9

ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996)).

Without more explanation, I am unable to discern either the weight assigned to Mr. DeHerrera's medical examiners' or Mr. Clemens' opinions, or the reasoning for that weight. Thus, the ALJ's decision to accord very little weight to Dr. Rodriguez's opinion in favor of the medical care providers' contrary opinions, and despite Mr. Clemens' potentially corroborating statements, is not supported by substantial evidence.

4. <u>The ALJ Compared Mental Status Exam Findings to the Amount of Treatment Obtained.</u>

Mr. DeHerrera further argues that the ALJ erred by comparing the amount of mental health treatment Mr. DeHerrera received with Dr. Rodriguez's more extreme mental health findings. ECF No. 14 at 11. Mr. DeHerrera cites *Grotendorst*, which provides that "consideration of the amount of treatment received by a claimant does not play a role" in the ALJ's determination of severity of an impairment. 370 F. App'x 879, 882–83 (10th Cir. 2010). However, the determination of severity cited in *Grotendorst* occurs at step two in the ALJ's sequential process, which is not at issue in this case. Instead the parties are disputing Mr. DeHerrera's mental RFC, which is determined at step three in the ALJ's process.

As discussed above, in determining a claimant's RFC, the ALJ weighs medical opinion evidence using the regulatory factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). One such factor is the opinion's consistency with the record as a whole, which may include the amount of treatment a claimant has received. *See, e.g.*, *Harman v. Colvin*, 2015 WL 5693559 at *7 (D. Colo. Sept. 29, 2015) (upholding the ALJ's determination that a medical source's opinion was inconsistent with the rest of the record, including "'the absence of even minimal medical management for allegedly severe symptoms of anxiety and depression.'"). Thus, in determining

the weight to assign to Dr. Rodriguez's opinion, it was proper for the ALJ to consider—as a part of the record as a whole—the amount of treatment Mr. DeHerrera obtained.

   **B. Dr. Campbell's Opinion.**

At the request of Mr. DeHerrera's attorney, Dr. Campbell conducted a medical evaluation of Mr. DeHerrera on March 26, 2015. R. 24. She concluded that Mr. DeHerrera should lift only ten pounds, avoid lifting weights over his shoulder, avoid climbing, limit his standing and walking to three hours a day, and limit other activities such as stooping, squatting, kneeling, crawling, and bending. R. 804. The ALJ assigned "very little weight" to Dr. Campbell's medical source statement in determining Mr. DeHerrera's physical RFC, noting that:

> Dr. Campbell is not a treating physician. She saw the claimant one time shortly before the hearing . . . [Her] normal to mildly impaired findings do not match the extreme functional limitations offered by Dr. Campbell. Furthermore, the sporadic treatment record, showing significant gaps in medical care, is inconsistent with the restrictions indicated by Dr. Campbell.

R. 24. In his appeal, Mr. DeHerrera contends that the ALJ lacked valid reasons for rejecting Dr. Campbell's opinion of physical impairments. ECF No. 14 at 14. As with the ALJ's treatment of Dr. Rodriguez's statement, Mr. DeHerrera disputes each of the ALJ's reasons for assigning very little weight to Dr. Campbell's statement. I will address each reason in turn.

   1. <u>Dr. Campbell Was Not a Treating Physician and Saw Mr. DeHerrera Only Once.</u>

Mr. DeHerrera argues that the ALJ impermissibly considered the fact that Dr. Campbell only saw Mr. DeHerrera once and never treated him. ECF No. 14 at 14. However, as noted above with respect to Dr. Rodriguez, the ALJ is permitted to consider the existence and length of a treatment relationship in determining the weight to assign to a medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Thus, the ALJ properly considered whether Dr. Campbell provided treatment for the impairment in question and the number of times she saw the claimant.

11

2. <u>Dr. Campbell's Exam Findings Do Not Match Her Extreme Functional Limitations.</u>

Mr. DeHerrera also argues that the ALJ impermissibly misinterpreted certain of Dr. Campbell's findings while ignoring others. ECF No. 14 at 14. An ALJ may not substitute his medical judgment for that of a physician. *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996). An ALJ will be found to have overstepped his bounds by assessing whether the results of medical tests are an adequate basis on which to make a diagnosis. *Id.* Moreover, an ALJ "may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) (citing *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984)).

In deciding to assign very little weight to Dr. Campbell's statements, the ALJ highlighted the doctor's findings that Mr. DeHerrera's cervical range of motion was only mildly reduced; his gait was normal without an assistive device; and he had normal reflexes, nondermatomal diminished sensation, and a mild reduction in grip strength. R. 24. Mr. DeHerrera argues that the ALJ misinterpreted some of Dr. Campbell's exam results and ignored others that supported her recommended functional limitations. ECF No. 14 at 16–17. As a result, he argues that the ALJ erred in concluding that the doctor's "normal to mildly impaired" findings did not match the "extreme" functional limitations she recommended. ECF No. 14 at 17; R. 24. I agree.

With respect to Mr. DeHerrera's cervical range of motion, the Commissioner now concedes that the ALJ misinterpreted Dr. Campbell's measurements. ECF No. 15 at 17 n.13. The Commissioner does not dispute that the doctor's range of motion measurements in fact

varied from "less than half of normal" to "two-thirds of normal," despite the ALJ's interpretation that these results indicated only a "mildly reduced" range of motion.[2]  ECF No. 14 at 16.

Mr. DeHerrera further argues there is no evidence that Dr. Campbell relied on her observations about Mr. DeHerrera's gait, reflexes, sensation, and grip strength in determining her recommended functional limitations.  ECF No. 14 at 15; ECF No. 16 at 6.  Indeed, Dr. Campbell's recommended functional limitations appear to be based more on the "combined effects of the neck and back disorders with the right foot deformity" and "the index finger deformity" than on any of the observations with which the ALJ takes issue.  *See* R. 804, 806–08. The Commissioner counters that the ALJ properly considered these observations in determining how well-supported Dr. Campbell's opinion was.  ECF No. 15 at 17.  Be that as it may, it was improper for the ALJ to consider these observations—which he claimed did not "enhance" the doctor's opinion—while ignoring other observations that *did* support Dr. Campbell's opinion. ECF No. 15 at 18.

The ALJ ignored Dr. Campbell's review of Mr. DeHerrera's previous medical records, including an MRI showing disc herniations and canal stenosis, which may have corroborated her functional restrictions.  R. 797–803.  Additionally, the ALJ ignored Dr. Campbell's finding of positive Spurlings and Lehermitte's tests (designed to indicate nerve irritation in the spine).  R. 803.  Though the Commissioner now points out previous contradictory and inconclusive Spurlings and Lehermitte's test results, her post-hoc analysis cannot replace the ALJ's missing analysis in the first instance.  ECF No. 15 at 18–19 n.15.  The Commissioner may bolster the ALJ's position with "additional support," but she may not "invent a new ground of decision" that

---

[2] I decline the Commissioner's request to find harmless the "ALJ's summary/use of shorthand."  ECF No. 15 at 17 n. 13.  Instead I note that, as one of the few ostensibly "normal to mildly impaired" findings the ALJ relied upon to effectively dismiss Dr. Campbell's opinion, this mischaracterization was material.

the ALJ ignored.  *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006).  Thus, with respect to Dr. Campbell's review of Mr. DeHerrera's medical records and her positive test results, the ALJ overlooked evidence that may have supported Dr. Campbell's recommended functional limitations.  *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996)).

Because the ALJ ignored potentially probative evidence and misinterpreted test results that may have supported Dr. Campbell's recommended restrictions, the only evidence on which he can rely for his conclusion that Dr. Campbell's test results do not match her functional limitations are several "normal" results that the doctor may not have relied upon at all to make her recommendations.  These results do not amount to substantial evidence supporting the ALJ's decision to ignore Dr. Campbell's opinion.

3. <u>Dr. Campbell's Restrictions Are Inconsistent with the Amount of Treatment Obtained.</u>

Finally, Mr. DeHerrera contests the ALJ's consideration of the amount of treatment Mr. DeHerrera obtained as compared to Dr. Campbell's recommended limitations.  ECF No. 14 at 18.  As discussed above, however, an ALJ may consider the amount of treatment a claimant received as part of the record against which a medical opinion is compared.  Thus, it was proper for the ALJ to consider this factor in deciding the weight to assign to Dr. Campbell's opinion.

**ORDER**

For the reasons described above, the ALJ's decision to accord very little weight to the opinions of Dr. Rodriguez and Dr. Campbell was not supported by substantial evidence.  Although I will not opine about whether the ALJ should come to a different conclusion upon

14

remand and further review, I will note that such review could impact the ALJ's determination of Mr. DeHerrera's RFC and, subsequently, the ALJ's determination at step five of other employment for which Mr. DeHerrera might be eligible.

As a result, the Court REVERSES and REMANDS the Commissioner's decision denying claimant Justin J. DeHerrera's application for disability insurance and supplemental security income.

DATED this 15th day of September , 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge